# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL DIVISION** |
| | : | |
| | : | **Case No. 11-cr-88-SLR** |
| **v.** | : | |
| | : | |
| | : | |
| **DAVID GELLAD** | : | |

### DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

AND NOW, comes the Defendant, David Gellad, by and through his attorney, Stephen M. Misko, Esquire, and respectfully files this **Supplemental Sentencing Memorandum** in response to the revised Presentence Investigation Report and the Government's Sentencing Memorandum:

**I. Revised PSR Guideline Calculation incorporating U.S.S.G. § 4B1.5(b):**

**A. Waiver**

The original Presentence Investigation Report (PSR) published and filed on February 22, 2013 reflected a Total Offense Level of 31 and a Guideline Range for Imprisonment of 108 – 135 months.  Objections to the PSR were due March 6, 2013.  As noted in the Addendum to the Presentence Report, the Government had no objections to the presentence report, including the sentencing guideline range.  See page 23.  The Government also asserted that it "believes that the PSR correctly states the applicable Guidelines calculations."  See page 28.  On March 25, 2013, the Government emailed the Probation Officer objecting and/or requesting a 5-level increase in the Adjusted Offense

Level, pursuant to 4B1.5(b), resulting in a Total Offense Level of 36 and a Guideline Range of 188-235 months. As a result of this email, the Probation Office filed the instant Revised Presentence Report on March 27, 2013, adopting the Government's position.

Rule 32(f) of the Federal Rules of Criminal Procedure, "Objecting to the (Presentence) Report" states:

(1) Time to Object. Within 14 days after receiving the presentence report, the parties must state in writing any objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report.
(2) Serving Objections. An objecting party must provide a copy of its objections to the opposing party and to the probation officer.
(3) Action on Objections. After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may than investigate further and revise the presentence report as appropriate.

"Under Rule 32(f), parties must state in writing any objections to the PSR within 14 days of receiving it. The probation officer may consider any objections and revise the PSR if appropriate. Fed.R.Crim.P. 32(f)(3). At least seven days before sentencing, the probation officer must submit to the court and parties the PSR and an addendum containing any unresolved objections. Fed.R.Crim.P. 32(g). Still, a party may make a new objection at any time before sentence is imposed, which the court "may, for good cause, allow[.]" Fed.R.Crim.P. 32(i)(1)(D). Any undisputed portion of the PSR may be accepted as a finding of fact by the sentencing court. Fed.R.Crim.P. 32(i)(3)(A)." United States v. Jallad, 468 Fed.Appx. 600, 606 (6th Cir.2012).

This change to the original Presentence Report is objectionable given the Government's objection and/or request was untimely under Rule 32(f) and without leave of Court under Rule 32(i)(1)(D) and , therefore, waived. As such, Probation should and must not consider this 5-level increase, pursuant to 4B1.5(b).

**B. Applicability**

The original Presentence Investigation Report reflected a Total Offense Level of 31 and a Guideline Range for Imprisonment of 108 – 135 months. The revised Presentence Investigation Report included a 5-level increase, pursuant to 4B1.5(b), resulting in a Total Offense Level of 36 and a Guideline Range of 188-235 months. The Defendant objects to the revised PSR based on the improper application of a 5-level increase, pursuant to 4B1.5(b) for the following reasons:

1. U.S.S.G. Chapter Four are Criminal History and Criminal Livelihood sentencing enhancements and, generally, speak to the need to protect the public from offenders with past criminal conduct. Specifically, PART B -- CAREER OFFENDERS AND CRIMINAL LIVELIHOOD, relate to individuals with either substantial criminal history or patterns of criminal conduct engaged in as a livelihood.

2. The Commentary Background Note of 4B1.5 states in part that "[t]his guideline applies to offenders whose instant offense of conviction is a sex offense committed against a minor <u>and</u> who present a continuing danger to the public. The relevant criminal provisions provide for increased statutory maximum penalties for repeat sex offenders and make those increased statutory maximum penalties available if the defendant previously was convicted of any of several federal and state sex offenses."

The Defendant has no past criminal conduct or criminal history, nor has he engaged in criminal conduct as a livelihood. The defendant is not a repeat sex offender, and there is no evidence that he poses a continuing danger to the public. Contrary to the assertions of the Government that a sentence of 235 months is warranted to "protect the public from **possible** future crimes that the Defendant **may** commit, to avoid unwarranted sentencing disparities and to deter the Defendant and others from entering the United States to sexually exploit American children", the Defendant will present psychiatric evidence at sentencing that rebuts these broad

unsubstantiated declarations, as well as provide evidence consistent with the conduct being a character aberration. The vast majority of the Government's Sentencing Memorandum [Doc. 45, pp. 3-25; Exhibits 1-17] is an effort to demonize the Defendant in hopes of exasperating and inflating the sentence Court may impose. However, Mr. Gellad has pled guilty to Count 1 of the Indictment, Coercion or Enticement of a Minor, 18 U.S.C. § 2422(b), which carries a mandatory minimum period of incarceration of 120 months, notwithstanding the applicable advisory guideline range, which is at issue in this case, based on the revised PSR.

3. "Pattern of activity" involves "prohibited sexual conduct" [defined by 2426, as Chapter 117, 2422(b) violation] on two separate occasions [conduct either during the course of the instant offense, or that resulted in a conviction].

Count 1 of the Indictment reads "[f]rom on or about October 1, 2010 through on or about July 1, 2011, in the State and District of Delaware and elsewhere, the defendant . . . did knowing persuade, induce, entice, and coerce, and attempt to do so, an individual who had not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, to wit: (1) Unlawful Sexual Contact Second Degree, in violation of Title 11, Delaware Code, Section 768; and (2) Rape Fourth Degree, in violation of Title 11, Delaware Code, Section 770. All in violation of Title 18 United States Code, Section 2422(b)."

Count 1 of the Indictment, to wit, Coercion or Enticement of a Minor, 18 U.S.C. § 2422(b), is the "prohibited sexual conduct" and encompasses both the March 2011 and June 2011 trips. As such, there is no "pattern of activity" since the "prohibited sexual conduct" was a continuing course of conduct occurring on one occasion that being from on or about October 1, 2010 through on or about July 1, 2011. The

absence of "pattern of activity" negates the application of 4B1.5(b). In addition, the Indictment charges only sexual activity alleged to have occurred on one occasion in June 2011 in the State and District of Delaware.

The instant matter differs greatly in cases where the Court ruled that 4B1.5(b) was applicable given the independent, multiple occurrences of sexual misconduct by the defendant. See United States v. Carter, 292 Fed.Appx. 16 (11th Cir. 2008) ( defendant possessed over 4,800 photographs with eleven identifiable young girls and admitted taking multiple pictures with his web cam); United States v. Bastian, 650 F.Supp.2d 849 (N.D.Iowa 2009) (defendant sexually abused victim on more than one occasion when she was a minor and produced child pornography featuring her on more than one occasion); United States v. Dahmen, 675 F.3d 244 (3rd Cir. 2012) (discovery of pornographic images, explicit internet chats, and suggestive text messages in the home of a fourteen-year-old girl, pornographic video involving a different minor, and exchanging nude photographs and explicit videos with a fifteen-year-old girl from North Carolina); United States v. Leach, 491 F.3d 858 (8th Cir. 2007) (defendant pleaded guilty in Kansas state court to attempted aggravated criminal sodomy with a child under the age of 14 years, and one week before his scheduled sentencing on the Kansas offense, the defendant conversed in a chat-room with someone that he thought was a 14-year old girl named "Amber", and made arrangements to travel from his residence to her residence to engage in sexual activity); United States v Broxmeyer, 699 F.3d 265 (2nd Cir. 2012) (attempted production of child pornography, and criminal sodomy with a child age 15). In United States v. Crandon, 173 F.3d 122 (3rd Cir. 1999), a case to which the Government refers and in which the defendant took

sexually explicit photographs of a 14-year old and traveled to meet her for the purpose of engaging in sexual activity, the sentence of the Court was 78 months.

Without the 5-level increase as provided for by 4B1.5(b), Mr. Gellad would still be facing a mandatory minimum period of incarceration of 120 months and an advisory guideline range sentence of 108 – 135 months, after which time he would be deported to his native Canada to face a lifetime registration requirement as a convicted sex offender. Such a sentence would take into consideration the nature and circumstances of the offense and the history and characteristics of the defendant, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, as provided for by 18 U.S.C. § 3553(a).

**II. Claim of Restitution**

18 U.S.C. § 2259 "Mandatory Restitution",

> (b)(3) includes any costs incurred by the victim for –
>> (A) medical services relating to physical, psychiatric, or psychological care;
>> (B) physical and occupational therapy or rehabilitation;
>> (C) necessary transportation, temporary housing, and child care expenses;
>> (D) lost income;
>> (E) attorney's fees, as well as other costs incurred; and
>> (F) any other losses suffered by the victim as a proximate result of the offense.

The government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by the victim. United States v. Graham, 72 F.3d 352, 356 (3rd Cir. 1995).

In <u>United States v. Doe</u>, 488 F.3d 1154, 1160 (9th Cir. 2007), cited by the Government, $11,408 of the $16,475 Restitution Order was for 24 sessions of trauma counseling and care (once a month for each child for two years). The balance went for vocational training and management fees, based on the fact that the eight victims lived nearby in a rural area, stopped attending school and could jointly attend this training in the community in which they lived.

In <u>United States v. Evers</u>, 669 F.3d 645, 659 (6th Cir. 2012), the Court upheld the payment of a parent or guardians income loss to attend court sessions; however, denied a claim for child care services. "[E]valuated in light of its common-law foundations[,] proximate cause ... requires 'some direct relationship between the injury asserted and the injurious conduct alleged.' " <u>Hemi Group, LLC, v. City of New York,</u> 559 U.S. 1, 130 S.Ct. 983, 989, 175 L.Ed.2d 943 (2010) (quoting <u>Holmes v. Sec. Investor Prot. Corp.,</u> 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." <u>Id.</u> (quoting <u>Holmes,</u> 503 U.S. at 271, 274, 112 S.Ct. 1311).

The PSR reflects that the victim's family incurred expenses totaling $101,370.00 as a result of the Defendant's criminal conduct. See Paragraph 105. The Government is asking this Court for a Restitution Order in the amount of $150,941.00. [Doc. 45].

Based on the Protective Order agreed to by the parties and entered herein, the Defendant simply objects to any and all claimed expenses that are not specifically covered under 18 U.S.C. § 2259(b)(3), and are not a proximate cause of the offense. This would be $100,428 based on the amount provided for in the PSR, and $149,958 as claimed by the Government.

Contrary to the assertions of the Government, proximate cause damages are not any and all expenses incurred by a victim as a result of the instant offense. Rather, they must reflect treatment deemed necessary to remedy the harm in a more direct manner. See <u>In re McNulty</u>, 597 F.3d 344, 350, 352 (6th Cir.2010) holding that "[t]he requirement that the victim be 'directly and proximately harmed' [under the Crime Victims' Rights Act, <u>18 U.S.C. § 3771</u>] encompasses the traditional 'but for' and proximate cause analyses," and "requires that the harm to the victim be closely related to the conduct inherent to the offense, rather than merely tangentially linked."

With the exception of <u>United States v. Crandon</u> (50-day psychiatric hospitalization and related miscellaneous expenses), and <u>United States v. Doe</u>, which has not been adopted by the other circuits, the other citations referred to in the Government's Sentencing Memorandum are district court opinions that are neither controlling nor precedential in this district and circuit.

### III. Conclusion

For the above reasons, the Defendant, David Gellad, respectfully requests that this Honorable Court sentence in accordance with the original Presentence Investigation Report, filed herein on February 22, 2013, and limit the restitution, as requested in the PSR and on behalf of the victim, pursuant to 18 U.S.C. § 2259(b)(3) and in accordance with the law of this Circuit to the amounts specified herein.

**Respectfully submitted,**

**/s/ Stephen M. Misko**
**Stephen M. Misko, Esquire**
**Attorney for David Gellad**